## RANFORD *v.* SOUTHERN RAILWAY COMPANY.

An employee whose duties call him at frequent intervals to a place where fellow-servants are at work shovelling coal from railroad cars into a coal-bin is under no legal obligation to give them notice of his presence, if they have reason to apprehend that he may be inside the coal-bin at any time, and there is an established custom whereby they give timely warning whenever large lumps of coal are thrown into it.

Argued June 2,—Decided August 13, 1906.

Action for damages.   Before Judge Calhoun.   City court of Atlanta.   October 11, 1905.

*H. W. Dent* and *W. R. Hammond,* for plaintiff.

*Dorsey, Brewster, Howell & McDaniel,* for defendant.

EVANS, J.   On March 23, 1904, the plaintiff in error, David Ranford, was employed by the Southern Railway Company as a "helper" in its machine shop in the City of Atlanta.   Adjacent to the boiler-room was a coal-bin into which coal was being almost constantly thrown during the day through a window from cars stationed upon a side-track, and the firemen engaged in the boiler-room made frequent visits to the coal-bin for the purpose of loading coal into wheelbarrows and carrying it to the furnaces to be used as fuel.   It was to be expected that the men employed to unload the cars might at any hour during the day be at work shovelling coal through the window into the coal-bin, and that the men engaged to feed the furnaces might at any time be getting coal from the opposite side of the coal pile, which was usually raked down when it became so high that the men on the outside could not see those at work on the inside of the coal-bin.   Early in the

morning of the day just mentioned, the plaintiff was ordered by the company's foreman to take the place of one of the firemen. The plaintiff went to the coal pile and secured a wheelbarrow of coal, with which he fed the furnaces, and shortly returned for more coal. No coal was being unloaded from the cars when he made his first visit to the coal-bin, and when he returned he did not know that the men on the outside had resumed work, and could not see them because the coal pile was too high. As he was shovelling coal into the wheelbarrow, a lump of coal as large around as a man's body was hurled through the window and rolled down the pile upon his foot, severely injuring it. No' warning of any kind was given him, and it was impossible for him to get out of the way or for a fellow-workman, who saw the lump as it came through the window, to give him timely notice of his peril. The plaintiff had previously performed the duties of a fireman, and was familiar with the surroundings and the manner in which the work was carried on by the firemen and by the men employed to unload the coal-cars.

The suit for damages which the plaintiff brought against the railway company resulted in a judgment of nonsuit. Presumably the judgment was based upon the idea that the plaintiff, knowing the danger to which he voluntarily exposed himself by not notifying the men on the cars of his presence, was chargeable with contributory negligence. That these men, who had reason to apprehend his presence at any time, were guilty of negligence seems beyond question. The plaintiff, referring to their habit in the past, testified that "when them fellows throwed over lumps of coal, they always notified" the firemen who were at work on the opposite side of the coal pile; that the men unloading the cars "would always tell them;" that they say "Birmingham" before throwing large lumps of coal through the window into the coal-bin. The plaintiff added that Perry Davis, who was one of the regularly employed firemen, had stated that "they always say that." What Perry Davis may have stated as to this custom was purely hearsay and of no probative value. But we construe the testimony of the plaintiff to mean that such had been the custom while he had been at work, and that he had been informed by Davis that the men on the cars had always given warning to the firemen in the same way. If, as we understand the plaintiff to assert as a witness, the men unloading the cars were in the habit of calling out "Birmingham"

as a warning before throwing through the window large lumps of coal, he had a right to rely upon their observing this usual and necessary precaution, and was not guilty of negligence in undertaking to perform the duties assigned to him in the customary way without first taking steps to inform himself whether or not the men on the outside of the coal-bin were at work, and, if so, notifying them of his presence.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*